# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JASON LAWRENCE BURGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:14-cv-02393 |
| v. ) | Judge Trauger / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Motion for Judgment on the Pleading and Administrative Record." Docket No. 8. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 10.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment on the Pleading and Administrative Record" (Docket No. 8) be GRANTED, and that the decision of the Commissioner be REMANDED for further consideration of Plaintiff's mental impairments.

# I.  INTRODUCTION

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on August 1, 2013, alleging that he had been disabled since March 21, 2013, due to "PTSD, Migraines, EBS, Knee Pain, Lower Back Pain, Raynauds, Shoulder Empingment [*sic*] Syndrome, TBI." *See, e.g.,* Docket No. 6, Attachment ("TR"), pp. 13, 65, 79, 122-29, 183.  Plaintiff's application was denied both initially (TR 65) and upon reconsideration (TR 79).  Plaintiff subsequently requested (TR 88-89) and received (TR 32-51) a hearing.  Plaintiff's hearing was conducted on July 28, 2014, by Administrative Law Judge ("ALJ") Michelle Thompson.  TR 32-51.  Plaintiff and vocational expert ("VE"), Chelsea Brown, appeared and testified, as did witness Kristen Burger.  *Id.*

On August 11, 2014, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 10-31.  Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since March 21, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: anxiety, posttraumatic stress disorder; left knee patellofemoral syndrome; and status post right knee arthroscopy and debridement of lateral meniscal tear (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and

404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) that is limited to lifting, pushing, pulling, and carrying twenty-five pounds, occasionally up to fifty pounds; sitting, standing, and/or walking for about six hours in an eight-hour workday; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolds; and frequent kneeling, crouching, and crawling. Mentally, he can understand, remember and carry out simple, detailed, and complex instructions and can maintain concentration, persistence, and pace for two hours at a time over an eight-hour workday. He can relate frequently to supervisors and coworkers but only occasionally to the general public due to ongoing posttraumatic stress disorder symptoms. He can adapt to infrequent change within a structured and low stress work setting.

6. The claimant is capable of performing past relevant work as a drill press operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 21, 2013, through the date of this decision (20 CFR 404.1520(f)).

TR 15-28.

On August 28, 2014, Plaintiff timely filed a request for review of the hearing decision. TR 7. On November 7, 2014, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

4

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> 1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to find that Plaintiff's mental impairments met or medically equaled Listing 12.06; (2) improperly weighed the medical opinion evidence of record; (3) failed to discuss Plaintiff's impairments of traumatic brain injury ("TBI") and major depressive disorder; (4) improperly discounted Plaintiff's credibility; (5) failed to address the credibility of Plaintiff's wife, who testified at his hearing; (6) erroneously found that Plaintiff's "efforts to find work, attend Job Fairs, and attend online classes established that he was not disabled"; (7) ignored Plaintiff's medical history and complaints of headaches when determining his ability to function; (8) failed to consider Plaintiff's medication side effects; (9) failed to evaluate the evidence in the light most favorable to Plaintiff; (10) erroneously did not find that Plaintiff was disabled based on hypothetical question #3; (11) erroneously determined Plaintiff's RFC; and (12) failed to properly find that Plaintiff was disabled. Docket No. 9. Plaintiff additionally argues that there is "newly discovered material evidence of June 5, 2014, not known until September 18, 2014, unavailable at the hearing on August 11, 2014." *Id.* Accordingly,

7

Plaintiff maintains that the Commissioner's decision should be reversed with an award of benefits, or in the alternative, remanded to "properly weigh the impact of TBI, Medical defects, and other severe impairments." *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

As an initial matter, the ALJ's decision is not "clearly erroneous"; proof of disability is not "overwhelming" or "strong [with] evidence to the contrary [] lacking"; "all essential factual issues" have not been resolved; and the record does not adequately establish Plaintiff's entitlement to benefits. Accordingly, reversal with an award of benefits is not warranted.

As set forth above, Plaintiff argues numerous grounds for remand, many of which relate to the ALJ's consideration of Plaintiff's mental impairments. *See* Docket No. 9. The ALJ in the

instant action thoroughly considered Plaintiff's mental impairments and evidence, including, *inter alia*, the function report, headache questionnaire, and pain questionnaire completed by Plaintiff's wife; Plaintiff's mental health treatment records, including his GAF scores, diagnoses, and medications; Plaintiff's 2013 reports of taking online classes, going to job fairs, applying for jobs, and interviewing for jobs; Plaintiff's report that he planned to stay home with his autistic son while his wife completed school; Plaintiff's mental examinations, as well as his VA compensation and pension examination; Plaintiff's VA disability ratings; and the opinions of the State agency psychological consultants. *See* TR 16-28, *citing* Exhibits 1A, 3A, 4D, 6E, 8E, 11E, 1F, 3F, 4F, 5F, 8F.

The ALJ further acknowledged that Plaintiff had dropped out of school; that Plaintiff had been hospitalized between February 16, 2014 and February 25, 2014[2] for inpatient mental health treatment for his "exacerbated" "psychological symptoms" and suicide attempt; that, on June 5, 2014, Plaintiff had undergone another VA compensation and pension examination for PTSD during which it was found that his symptoms had worsened and that he had total occupational and social impairment; that, on June 20, 2014, Plaintiff's wife had been designated as his full-time caregiver; and that Plaintiff's wife had dropped out of school to care for Plaintiff, administer his medication to him three times a day, manage his appointments, and assist him with bathing and managing his personal hygiene. *Id.*, *citing* Exhibits 7F, 8F, 10F, and 11F.

The ALJ also recounted the testimony of both Plaintiff and his wife, stating in part as

---

[2] The ALJ also noted that Plaintiff had been hospitalized from February 25, 2013 to March 21, 2013, the alleged onset date, because he had been found to be a danger to himself. TR 19. Because this hospitalization was before the alleged onset date, the undersigned will not discuss it further.

9

follows:

> In addition to the above evidence, the undersigned has given consideration to the hearing testimony. The claimant testified that his wife is his full-time caregiver and that she has his medications locked up and gives them to him throughout the day. He stated that he would forget if he took his medications if he had to manage them on his own and that he forgets other things, such as leaving doors open and "stuff like that." He testified that a typical day involves him waking up around five or six o'clock in the morning, getting something to eat, going back to bed for a couple of hours, and playing with his son, watching television, or playing on his phone. He stated that if he has a headache, he will take a pill and then lie down for another three hours. The claimant testified that he continues to think of a previous traumatic experience that occurred during a deployment, that he does not like to talk to people, and that it is easier for him to stay at home.
>
> . . .
>
> The claimant's wife also testified at the hearing. She stated that she is the claimant's caregiver because he is unable to keep track of his daily medication, leave the house, or do basic errands such as shopping and paying the bills. She stated that he does nothing around the house and only sleeps or rests. She testified that he has nightmares and that he wakes her up repeatedly. She stated that the claimant has attempted suicide twice because he feels a lot of guilt over things that happened to his fellow soldiers. She stated that he becomes easily frustrated and thinks that people are picking on him but that he does not have any angry outbursts. Mrs. Burger further testified that the claimant does not socialize with others and is not comfortable with people being in the house.

TR 24-25.

After thoroughly reviewing the evidence in its entirety, however, the ALJ determined that Plaintiff's mental impairments were not disabling. TR 13-28. In so doing, the ALJ acknowledged that Plaintiff's symptoms had worsened in 2014, but noted that the evidence *prior to* February 2014 demonstrated that "it is *possible* that the claimant's

10

symptoms *can improve* with treatment." TR 25 (emphasis added). Ultimately, the ALJ opined, "Therefore, there is no evidence to suggest that the claimant's current mental state can be expected to last for a continuous period of twelve months." *Id.*

As the ALJ acknowledged, the evidence establishes that Plaintiff's symptoms had worsened between at least February and June 2014. Plaintiff's hearing was held in July 2014, and the ALJ issued her decision in August 2014. The ALJ's determination that "there [was] no evidence to suggest that the claimant's current mental state can be expected to last for a continuous period of twelve months" was purely speculative and based on her belief that "it is possible that the claimant's symptoms can improve with treatment." Accordingly, the undersigned recommends that this action be REMANDED to determine whether Plaintiff's worsened symptoms have met the continuous twelve-month durational requirement, and if so, whether those worsened symptoms meet or medically equal a listing level severity.[3]

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment on the Pleading and Administrative Record" (Docket No. 8) be GRANTED, and that the decision of the Commissioner be REMANDED for further evaluation of Plaintiff's mental impairments.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen

---

[3] With regard to Plaintiff's physical impairments, however, the undersigned has reviewed Plaintiff's arguments, the ALJ's decision, and the evidence of record, and finds that the ALJ properly evaluated Plaintiff's physical impairments. The ALJ's findings related to Plaintiff's physical impairments, therefore, should stand. Accordingly, remand is warranted solely on the issues related to Plaintiff's mental impairments.

(14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge